# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HEATHER LAWRENCE, KATHY )
CAMPAU, and LAURA )
PETTIS-CLARK, individually and on )
behalf of all other persons similarly )   Case No. 22-cv-11517-GAD-EAS
situated, )
                                               )    Hon. Gershwin A. Drain
            Plaintiffs, )
     v. )
                                              )   Mag. Judge Elizabeth A. Stafford
BENESYS, INC., )
               Defendant. )

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR APPROVAL OF FLSA SETTLEMENT, FOR
APPOINTMENT OF SETTLMENT ADMINISTRATOR, FOR APPROVAL
OF SERVICE AWARDS, AND
<u>FOR APPROVAL OF ATTORNEYS' FEES AND COSTS</u>**

Douglas M. Werman (IL 6204740)
dwerman@flsalaw.com
Maureen A. Salas (IL 6289000)
msalas@flsalaw.com
WERMAN SALAS P.C.
77 W. Washington St., Ste 1402
Chicago, IL 60602
T: (312) 419-1008

**Attorneys for Plaintiffs and others
similarly situated**

# **TABLE OF CONTENTS**

I.    PROCEDURAL BACKGROUND .................................................................1

II.   SUMMARY OF THE SETTLEMENT ......................................................3

III.  THE SETTLEMENT IS FAIR AND REASONABLE...............................6

    A.    A Bona Fide Dispute Between The Parties Exists Over the Scope of Job Duties Performed by Plaintiffs ........................................7

    B.    The Proposed Settlement Reflects a Fair and Reasonable Resolution.............................................................................................8

        1.    There is No Evidence of Fraud or Collusion .............................9

        2.    This Is a Complex, Expensive and Potentially Lengthy Case...............................................................................10

        3.    Settlement Only Occurred After a Thorough and Complete Review of the Payroll Data. ...................................11

        4.    The Likelihood of Success on the Merits ................................12

        5.    Plaintiffs' Counsel and Named Plaintiffs Support the Settlement...........................................................................13

        6.    The Reaction of Absent Class Members...................................14

        7.    Public Interest Supports the Award ..........................................14

IV.   THE SETTLEMENT ADMINISTRATOR SHOULD BE APPOINTED .......................................................................................15

V.    PLAINTIFFS' COUNSEL IS ENTITLED TO A REASONABLE FEE OF ONE THIRD OF THE TOTAL SETTLEMENT PAYMENT ..............15

    A.    The Benefit Conferred to the Plaintiffs. .........................................17

    B.    The Value of Plaintiffs' Counsel's Services on an Hourly Basis .................................................................................................18

    C.    Plaintiffs' Counsel Executed Contingency Fee Arrangements, and Bore the Risk That They Would Receive No Recovery if Unsuccessful .................................................19

    D.    Public Policy Supports the Award ...................................................20

    E.    Complexity of the Litigation ............................................................21

    F.    The Professional Skill and Standing of Counsel.................................21

VI.    PLAINTIFFS' LITIGATION COSTS ..........................................................22

VII.   NAMED PLAINTIFFS ARE ENTITLED TO A SERVICE AWARD........22

VIII.  CONCLUSION.............................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Athan v. United States Steel Corp.*
  523 F.Supp.3d 960 (E.D. Mich. 2021) ........................................................ passim

*Barnes v. Winking Lizard, Inc.*
  No. 18-CV-952, 2019 WL 1614822 (N.D. Ohio Mar. 26, 2019) .......................18

*Bellifemine v. Sanofi-Aventis U.S. LLC*
  No. 07 Civ. 2207, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ........................19

*Bert v. AK Steel Corp.*
  No. 1:02-CV-647 SSB, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008)................9

*Bessey v. Packerland Plainwell, Inc.*
  No. 4:06-cv-95, 2007 WL 3173972 (W.D. Mich. Oct. 26, 2007) ......................16

*Bowling v. Pfizer, Inc.*
  102 F.3d 777 (6th Cir. 1996) ...............................................................................16

*Bozak v. FedEx Ground Package Sys., Inc.*
  No. 11 Civ. -738, 2014 WL 3778211 (D. Conn. July 31, 2014)...........................6

*Brooklyn Savings Bank v. O'Neil*
  324 U.S. 697 (1945) ..............................................................................................7

*Carr v. Bob Evans Farms, Inc.*
  No. 1:17-CV-1875, 2018 WL 7508650 (N.D. Ohio July 27, 2018) .....................6

*Castillo v. Morales, Inc.*
  No. 12-CV-650, 2015 WL 13021899 (S.D. Ohio Dec. 22, 2015) ......................18

*Castillo v. Noodles & Co.*
  No. 16-CV-03036, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016) ........................6

*Daoust*
  No. 17-cv-13879, 2019 WL 2866490 (E.D. Mich. July 3, 2019) .......................16

*Dillworth v. Case Farms Processing, Inc.*
  No. 5:08-CV-1694, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010) .......... 17, 19, 20

*Doe 1-2 v. Déjà vu Services, Inc.*
  16-CV-10877, 2017 WL 2629101 (E.D. Mich. June 19, 2017)..........................20

*Does 1, 2, & 3 v. Coliseum Bar & Grill*
  No. 17 -12212, 2020 WL 7346693 (E.D. Mich. Oct. 22, 2020) ................... 10, 21

*Does 1-2 v. Deja Vu Servs.*, Inc.

iv

925 F.3d 886 (6th Cir. 2019) ......................................................... 11, 14

*Feiertag v. DPP Holdings, LLC*
2016 WL 4721208 (S.D. Ohio Sept. 9, 2016) .....................................18

*Genesis Healthcare Corp. v. Symczyk*
133 S. Ct. 1523 (2013) ..................................................................5

*Gentrup v. Renovo Services, LLC*
No. 07-CV-430, 2011 WL 2532922 (S.D. Ohio June 24, 2011 ..........................21

*Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*
212 F.R.D. 400 (E.D. Wis. 2002) .........................................................23

*Griffin v. Flagstar Bancorp. Inc.*
No. 10 Civ. 10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ..................23

*In re BankAmerica Corp. Securities Litig.*
210 F.R.D. 694 (E.D. Mo. 2002) ..........................................................13

*In Re Cardizem CD Antitrust Litig.*
F.R.D. 508 (E.D. Mich 2003) ..............................................................14

*In re Dunn & Bradstreet Credit Services Customer Litigation*
130 F.R.D. 366 (S.D. Ohio 1990) .........................................................23

*Kritzer v. Safelite Solutions, LLC*
No. 10-CV-0729, 2012 WL 1945144  (S.D. Ohio May 30, 2012) .....................25

*Lasalle Town Houses Cooperative Association v. City of Detroit*
No. 4:12-cv-13747, 2016 WL 1223354 (E.D. Mich. March 29, 2016) ..............25

*Levan v. Sears, Roebuck & Co.*
984, F. Supp. 2d 855 (E.D. Tenn. 2013) .............................................14

*Lewis v. Huntington Nat'l Bank*
No. 2:11-CV-00058, 2013 WL 12231327 (S.D. Ohio May 30, 2013) ...............10

*Liberte Capital Group v. Capwill*
No. 99-CV-818, 2007 WL 2492461 (N.D. Ohio Aug. 29, 2007) .......................23

*Lopez v. Silfex, Inc.*
No. 3:21-CV-61, 2021 WL 5795280 (S.D. Ohio Dec. 3, 2021) ...........................8

*Lynn's Food Stores, Inc. v. U.S.*
679 F.2d 1350 (11th Cir. 1982) ...........................................................7

*McMahon v. Olivier Cheng Catering and Events*
No. 08-CV-8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ..........................20

*Mouloki v. Epee*
 No. 14 Civ. 5532, 2017 WL 2791215 (N.D. Ill. June 27, 2017)..........................22

*O'Bryant v. ABC Phones of N. Carolina, Inc.*
 No. 19-CV-02378-SHM-TMP, 2020 WL 7634780 (W.D. Tenn. Dec. 22, 2020)
 ...................................................................................................... 11, 12, 25

*Osman v. Grube, Inc.*
 No. 16-CV-00802-JJH, 2018 WL 2095172 (N.D. Ohio May 4, 2018) .. 16, 21, 25

*Paxton v. Bluegreen Vacations Unlimited*
 No. 16-CV-523, 2019 WL 2067224 (E.D. Tenn. May 9, 2019)..........................25

*Pieber v. SVS Vision*
 No. CV 20-13051, 2022 WL 687248 (E.D. Mich. Mar. 8, 2022)....... 6, 10, 11, 25

*Rawlings v. Prudential–Bache Properties*
 9 F.3d 513 (6th Cir. 1993) ............................................................................ 15, 16

*Rembert v. A Plus Home Health Care Agency LLC*
 986 F.3d 613 (6th Cir. 2021) ...............................................................................15

*Rotuna v. W. Customer Mgmt. Grp., LLC*
 09-CV-1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010)....................... 17, 19

*Sanchez v. Roka Akor Chicago LLC*
 No. 14 Civ. 4645, 2017 WL 1425837 (N.D. Ill. Apr. 20, 2017)........................22

*Scobey v. General Motors, LLC*
 No. 20-12098, 2021 WL 5040312 (E.D. Mich. Oct. 28, 2021) ............. 10, 16, 20

*Sewell v. Bovis Land Lease, Inc.*
 No. 09-CV-6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)........................19

*Skaggs v. Mobile Climate Control Corp.*
 No. 21-CV-10250, 2021 WL 2434125 (E.D. Mich. June 15, 2021)....................16

*Swigart v. Fifth Third Bank*
 No. 11-CV-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014) ...........................19

*Velez v. Majik Cleaning Serv., Inc.*
 No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007).......................24

*Ware v. CKF Enterprises, Inc*.
 No. CV 5:19-183-DCR, 2020 WL 2441415 (E.D. Ky. May 12, 2020).. 16, 23, 24

**Statutes**

Fair Labor Standards Act .................................................................................. passim

Plaintiffs Heather Lawrence, Kathy Campau and Laura Pettis-Clark ("Named Plaintiffs"), on behalf of themselves and Participating Settlement Class Members (collectively, "Plaintiffs"), and Defendant BeneSys, Inc. ("Defendant") (together, "the Parties") have reached a settlement in the above-captioned lawsuit ("the Action"). The settlement is memorialized in the Joint Stipulation of Settlement and Release Agreement attached hereto as Exhibit 1 ("Settlement Agreement"). Named Plaintiffs now request that the Court approve the settlement as a reasonable settlement of a bona fide dispute. This motion is unopposed.

## I.   **PROCEDURAL BACKGROUND**

This case was filed on July 6, 2022, by Named Plaintiffs Heather Lawrence, Kathy Campau and Laura Pettis-Clark. ECF No. 1. Named Plaintiffs worked for Defendant as salaried Plan Associates. Named Plaintiffs alleged that Defendant required them to work over forty (40) hours in individual workweeks, but did not pay them overtime at one-and-one-half times their regular rate of pay, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. Defendant denied all allegations of FLSA violations.

Before filing this lawsuit, Plaintiffs' Counsel conducted a thorough investigation into the merits of the potential claims and defenses. *See* Exhibit 2, Declaration of Maureen A. Salas ¶ 13 (herein "Salas Decl. ¶__"). Plaintiffs' Counsel focused their investigation and legal research on the underlying merits of the

1

potential collective action members' claims, the damages to which they were entitled, and the likelihood of collective action certification. *Id.* Plaintiffs' Counsel obtained and reviewed documents from the Named Plaintiffs, reviewed Defendant's job postings, and conducted in-depth interviews with the Named Plaintiffs. *Id.*

On July 19, 2021, in an effort to explore potential prelitigation resolution of these claims, Plaintiffs' Counsel informed BeneSys by letter of the allegations that Defendant's overtime pay practice violated the FLSA. *See* Salas Decl. ¶ 14. Defendant denied the allegations. *Id.* Nevertheless, the Parties agreed to schedule a pre-filing mediation, and to that end, executed an agreement to toll the statute of limitations for all Plan Associates as of July 19, 2021. *Id.*

In preparation for the mediation, the Parties engaged in informal discovery. *See* Salas Decl. ¶ 15. Defendant produced payroll data for 70 Plan Associates. *Id.* This allowed Plaintiffs' Counsel to analyze the data and construct a damages model. *Id.* Following Plaintiffs' Counsel's initial review of the data, the Parties conferred about the specific pay categories within the data and Defendant supplemented the production *Id.* The Parties exchanged position statements outlining their legal and factual positions on all issues prior to mediation, including analysis of the administrative exemption to the at-issue job position and evidence of the hours worked by individuals in the at-issue job position. *Id.* The mediation took place on February 8, 2022 before experienced mediator Lynn Cohn. *Id.* ¶ 16. The Parties did

not resolve the action by the end of the day, but the mediator made a mediator's settlement proposal, which the parties accepted on February 11, 2022. *Id.* ¶ 17.

Plaintiffs and their counsel have conducted a comprehensive investigation and evaluation of the facts and law relating to the claims asserted in the Litigation. Defendant continues to maintain that it compensated all Plaintiffs in accordance with the FLSA. Nevertheless, in light of the costs, risks, and delay of litigation balanced against the benefits of settlement, the Parties believe that the Settlement as provided in the Settlement Agreement is in their respective best interests and represents a fair and reasonable resolution of a bona fide dispute between the Parties.

## II.  <u>SUMMARY OF THE SETTLEMENT</u>

Defendant has agreed to pay up to the maximum total amount of $400,000.00 (the "Maximum Gross Settlement Amount") to settle the overtime claims of the 86 Eligible Settlement Class Members.[1] *See* Settlement Agreement.

From the Maximum Gross Settlement Amount, deductions will be made for Court-approved Attorneys' Fees, Litigation Expenses and Costs, Settlement Administration Expenses, and Named Plaintiffs' Service Awards. *Id.* ¶ 1.l. The settlement proceeds that remain after these deductions is referred to as the "Net Settlement Amount." *Id.* The individual estimates of unpaid overtime wages will be

---

[1] After the Parties accepted the mediator's proposal, Defendant identified additional employees who had worked as a Plan Associate at some point during the Class Period and provided Plaintiffs' counsel with updated payroll information.

paid to each Eligible Settlement Class Member from the Net Settlement Amount. "Eligible Settlement Class Members" means the eighty-six (86) persons employed as Plan Associates at some point during the Class Period and who are identified by Employee ID Number on Exhibit B to the Settlement Agreement. *Id.* ¶¶ 1.e, i. Each Eligible Settlement Class Member who signs and cashes a Settlement Check during the Acceptance Period is a Participating Settlement Class Member. *Id.* ¶ 1.m.

Each Eligible Settlement Class Member's share of the Net Settlement Amount is calculated based on the workweeks they worked as a Plan Associate during the Class Period, the wages they were paid, and the number of regular hours they were paid for working in each pay period in the Class Period. *Id.* ¶ 4.e. As set forth in the Settlement Agreement, first, Plaintiffs' Counsel split the number of Regular Hours paid in each bi-weekly pay period into two workweeks. *Id.* Regular Hours 0-40 will be allotted to Work Week 1, and any hours greater than 40 will be allotted to Work Week 2. *Id.* Additional Work Time will be added to each Work Week to compute the Total Hours Worked in the Work Week. *Id.* Forty (40) hours will then be subtracted from any Work Week to compute the number of Overtime Hours Worked in the Work Week. *Id.* To calculate Owed Overtime Wages, the number of Overtime Hours Worked in the workweek will be multiplied by one-half that person's Regular

Rate.[2] *Id.* Each Eligible Settlement Class Member's Settlement Payment will be determined by dividing the sum of his or her total estimated unpaid overtime wages by the total of all estimated unpaid overtime wages for all Eligible Settlement Class Members, and by multiplying the quotient by the Net Settlement Amount. *Id.*

Shortly after this Court's approval of the Settlement Agreement, the Settlement Administrator will mail Settlement Notices and Settlement Payments to each Eligible Settlement Class Member for his or her ratable share of the Net Settlement Amount. *Id.* ¶ 5.f.  The Notice will explain what this lawsuit is about, explain what the settlement payment represents, and explain the Eligible Settlement Class Member's options.  *See Notice of Settlement and Opportunity to Participate Letter* attached as Exhibit C to Exhibit 1 (Settlement Agreement). No Eligible Settlement Class Member shall be required to first submit a consent or claim form to receive his or her Settlement Payment. *See* Settlement Agreement ¶ 5.f.  Each Settlement Check shall contain an endorsement on the back titled "Consent to Join and Release of Claims." *Id.* ¶ 6.a. The Settlement Checks must be negotiated by the Eligible Settlement Class Members during the 150-day Acceptance Period. *Id.* ¶ ¶ 5.f, 1.a. Any Eligible Settlement Class Member who does not sign and cash a Settlement Check within the Acceptance Period will not be bound by any release of

---

[2] For settlement purposes, damages were computed using the fluctuating workweek method of computing overtime. 29 C.F.R. § 778.114.

claims. *Id.* ¶ 6.b. Any portion of the Net Settlement Amount that remains following the expiration of the Acceptance Period shall be returned to Defendant. *Id.* ¶ 4.a.

## III.   <u>THE SETTLEMENT IS FAIR AND REASONABLE</u>

Collective actions under the FLSA are fundamentally different than class actions raised under Fed. R. Civ. P. 23.  *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013).  The due process concerns present in the settlement of Rule 23 class actions are not present in collective actions brought under the FLSA because there are no absent class members who will be bound to a release of their claims. *See Castillo v. Noodles & Co.*, No. 16-CV-03036, 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016).[3]

As a result, to approve an FLSA collective action settlement, a district court need only engage in a one-step process. *Pieber v. SVS Vision*, No. CV 20-13051, 2022 WL 687248, at *3 (E.D. Mich. Mar. 8, 2022) ("The one-step approval process requested is appropriate because it satisfies all procedural and substantive prerequisites for approval of an FLSA collective action."); *Carr v. Bob Evans Farms, Inc.,* No. 1:17-CV-1875, 2018 WL 7508650, at *2 (N.D. Ohio July 27, 2018). Unlike settlements under Rule 23, FLSA settlements are not subject to a two-stage process

---

[3]     *See also Bozak v. FedEx Ground Package Sys., Inc.,* No. 11 Civ. -738, 2014 WL 3778211 (D. Conn. July 31, 2014) (resolving FLSA settlement with one step and explaining differences between collective actions under Section 216(b) of FLSA and Rule 23 class actions).

of preliminary approval followed by final approval. Similarly, there are no objectors to FLSA settlements because no class member is bound by the settlement unless he or she affirmatively opts into the case. Here, the Named Plaintiffs have already joined the Action and are Parties to the settlement.

Where, as here, the litigation arises from under a private enforcement action under § 216(b) of the FLSA, the standard for approval of a settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation and is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (*citing Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)). First, the Court must find the presence of a bona fide dispute. "A bona fide dispute has to do with whether some issue of the employer's liability is 'actually and reasonably in dispute.'" *Athan v. United States Steel Corp.*, 523 F.Supp.3d 960, 965 (E.D. Mich. 2021). Next, the Court must determine that the settlement is fair and reasonable. *Id*. District Courts in the Sixth Circuit "regularly find that the FLSA context counsels in favor of courts approving settlements." *Id.* at 964-65.

### A.     A Bona Fide Dispute Between the Parties Exists Over the Scope of Job Duties Performed by Plaintiffs

Named Plaintiffs' principal theory of liability alleges that Defendant violated the FLSA because it failed to pay overtime wages due to them. Named Plaintiffs allege that Defendant misclassified them and other Plan Associates as exempt from

the overtime requirements of the FLSA. Named Plaintiffs further allege that they regularly worked over forty (40) hours per workweek and should have been paid overtime wages for the time they worked over forty (40) hours. Defendant contests both the legal theory of the case and the factual allegations. Defendant argues that Plaintiffs were properly classified as exempt and denies that Plaintiffs worked more than a *de minimus* amount of overtime hours.

There is also a bona fide dispute here regarding whether this case could be maintained going forward as a collective action. Named Plaintiffs allege that all Plan Associates performed the same job duties, regardless of location and supervisors. Defendant denied that the Named Plaintiffs were similarly situated to each other, or any putative members of the potential collective. Absent early resolution, the Parties would have been subject to contested litigation on several issues including conditional certification and/or decertification and issues of liability and damages as to overtime hours worked.

If Named Plaintiffs' allegations were all ultimately correct, then Defendant would be faced with the prospect of a significant monetary verdict in favor of Plaintiffs, as well as the obligation to pay litigation fees and costs. If Defendant was to prevail, then Named Plaintiffs faced the risk of losing a recovery of any kind. Accordingly, the Court should conclude that a bona fide dispute existed.

**B.   The Proposed Settlement Reflects a Fair and Reasonable Resolution**

Although the Sixth Circuit has not directly identified the factors courts should use in assessing whether an FLSA collective action is fair and reasonable, many district courts in this Circuit consider the seven factors used to assess Rule 23 class actions. *Athan*, 523 F. Supp. 3d at 965.*see also Lopez v. Silfex, Inc.*, No. 3:21-CV-61, 2021 WL 5795280, at \*4 n.1 (S.D. Ohio Dec. 3, 2021). Those factors are: (1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest. *Athan*, 523 F.Supp.3d at 965 (internal quotations omitted). These factors weigh in favor of approval of the present settlement agreement, as described below:

### 1.  There is No Evidence of Fraud or Collusion

This Settlement Agreement was the product of arm's-length and spirited negotiations by experienced counsel. The Parties engaged in a full-day mediation with an independent third-party mediator, Lynn Cohn. *See* Salas Decl. ¶ 16. The Parties did not reach agreement at the end of the first day, but continued to engage in the mediation process until they were able to come to a mutually agreeable resolution on February 11, 2022. *Id.* ¶ 17; *see also Bert v. AK Steel Corp.*, No. 1:02-CV-647 SSB, 2008 WL 4693747, at \*2 (S.D. Ohio Oct. 23, 2008) (stating that "[t]he participation of an independent mediator in settlement negotiations virtually insures

that the negotiations were conducted at arm's length and without collusion between the parties."). Both sides were represented by experienced and prepared counsel. *See* Salas Decl. . ¶ 18. Furthermore, none of the Named Plaintiffs have objected to the proposed settlement, and the settlement provides adequate notice to potential plaintiffs of their entitlement under the settlement agreement. *See Scobey v. General Motors, LLC*, No. 20-12098, 2021 WL 5040312, *3 (E.D. Mich. Oct. 28, 2021). Were this case to be litigated to judgment, both sides would have borne risks and costs. Prior to reaching agreement on the proposed settlement, both Parties had conducted extensive investigations into, and had enough information to properly evaluate, the strengths and weaknesses of their claims. *See* Salas Decl. ¶ 15. This factor therefore supports approval of the settlement.

### 2.  This Is a Complex, Expensive and Potentially Lengthy Case

"[E]mployment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming." *Does 1, 2, & 3 v. Coliseum Bar & Grill*, No. 17 - 12212, 2020 WL 7346693, at *1 (E.D. Mich. Oct. 22, 2020). This case would require extensive review of the case law and a dispute over commonality. The case itself involves a potential collective class of 86 individuals. *See* Settlement Agreement ¶ 1.i. It is in the Parties' best interests to avoid these significant expenses.  *See Pieber,* 2022 WL 687248, at *2 (finding in FLSA misclassification case that "settlement will avoid complex, expensive, and perhaps protracted litigation"); *Athan*, 523 F. Supp.

3d at 967; *see also Lewis v. Huntington Nat'l Bank*, No. 2:11-CV-00058, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013) (recognizing that, absent settlement, wage and hour plaintiffs "would have had to show, through testimony and documentary evidence, the specific hours, times, and dates worked—a process requiring extensive and expensive additional discovery").

If the parties were to continue with litigation, there would be extensive written discovery, document production, and depositions. The discovery in this case could include up to 86 plaintiffs. If the litigation continued, the Parties still faced motions practice, with competing sides arguing for certification and stage-two decertification, and likely summary judgment. The Parties also faced litigating issues such as willfulness and the appropriateness of liquidated damages. If not resolved at the summary judgment stage, the Parties likely would have proceeded to trial. The litigation could have taken years. The Parties have reasonably compromised to minimize or altogether avoid future time expended, risks and litigation costs. Salas Decl. ¶ 20. This settlement provides speedy and reasonably affordable finality.

### 3. Settlement Only Occurred After a Thorough and Complete Review of the Payroll Data.

In order to prepare for the mediation, the Parties engaged in informal discovery. *See* Salas Decl. ¶ 15. Informal discovery is sufficient to satisfy the second factor. *See Does 1-2 v. Deja Vu Servs.*, Inc., 925 F.3d 886, 898-99 (6th Cir. 2019); *Pieber,* 2022 WL 687248, at *2 (pre-mediation exchange of information constituted

"sufficient discovery to calculate the risks involved in continued litigation");
*O'Bryant v. ABC Phones of N. Carolina, Inc.*, No. 19-CV-02378-SHM-TMP, 2020
WL 7634780, at *14 (W.D. Tenn. Dec. 22, 2020). Defendant provided payroll data
for Plan Associates who worked for Defendant during the relevant statutory period.
*See* Salas Decl. ¶ 15. The informal discovery allowed Plaintiffs' Counsel to
determine the extent and scope of the collective claims, and allowed a productive
mediation. In addition, Plaintiffs' Counsel conducted extensive interviews with
Named Plaintiffs, gathered job descriptions from Defendant's website, and gathered
employment documents in Named Plaintiffs' possession. *Id.* ¶ 13. The Parties also
exchanged mediation statements for the purposes of settlement, outlining facts and
legal contentions at a very early stage. *Id.* ¶ 15.  This allowed the Parties to conduct
informed settlement negotiations that were not based on abstract or hypothetical
calculations but rather raw data and Plaintiff testimony.

### 4. The Likelihood of Success on the Merits

While Named Plaintiffs maintain that their wage and hour claims are strong,
Defendant vigorously disputes liability and damages, thus posing serious litigation
risks. Named Plaintiffs would have had to fight to certify this action at the first stage
of conditional certification, and then defend against a motion to decertify. The
Parties furthermore strongly contest the question of whether there is liability at all.
Defendant denies that its Plan Associates were improperly classified. Even if Named

Plaintiffs prevailed on this issue, they would still have to prove that they worked overtime and that the violation was willful in order to extend the limitations period from 2 to 3 years. Named Plaintiffs also risked not being able to recover liquidated damages.  Given that Defendant did not track the time Plan Associates worked, determining the number of hours they worked would be a highly fact intensive inquiry, reliant on testimony at trial. The settlement provides significant relief and eliminates the additional risks the Parties would bear if the litigation continued.

### 5. *Plaintiffs' Counsel and Named Plaintiffs Support the Settlement*

Plaintiffs' Counsel has gained a comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and has ample evidence on which to base an informed assessment of the proposed settlement. In Plaintiffs' Counsel's opinion this is a fair and reasonable compromise of the disputed issues in this case that represents significant relief and eliminates the additional risks the parties would bear if the litigation were to continue. *See* Salas Decl. ¶ 19. "Although the Court is not bound by counsel's opinion, their opinion nevertheless is entitled to great weight." *In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 702 (E.D. Mo. 2002). Additionally, the three Named Plaintiffs participated in the day long mediation, agreed to accept the mediator's proposal, and signed the Settlement Agreement. *See* Salas Decl. ¶ 23.

### 6.  *The Reaction of Absent Class Members*

Because this is an opt-in FLSA collective action, there are no absent class members. All Eligible Settlement Class Members will be given a choice. If they negotiate their Settlement Check, they will become a Participating Class Member and will provide Defendant with a narrow release of claims for unpaid overtime wages while they worked for Defendant as an exempt Plan Associate between July 19, 2018 and February 4, 2022. *See* Settlement Agreement, ¶ 6.b. Any Eligible Settlement Class Member who does not sign and cash a Settlement Check within the Acceptance Period will not be bound by any release of claims. *Id.* ¶ 6.c.

### 7.  *Public Interest Supports the Award*

This Circuit has held that "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Does 1-2*, 925 F.3d at 899 (quoting *In Re Cardizem CD Antitrust Litig.*, F.R.D. 508, 530 (E.D. Mich. 2003)). Similarly, enforcing the FLSA furthers an important interest in "encouraging employees and others to ensure that employers comply with laws governing employment." *Levan v. Sears, Roebuck & Co.*, 984, F. Supp. 2d 855, 871 (E.D. Tenn. 2013). A fair settlement here will vindicate the FLSA rights of Plaintiffs and the collective class, and in so doing it will further the remedial purpose of the FLSA, "[raising] substandard wages and [giving] additional

14

compensation for overtime work." *Athan*, 523 F. Supp 3d at 968. This factor supports approval of the settlement.

## IV.   THE SETTLEMENT ADMINISTRATOR SHOULD BE APPOINTED

Plaintiffs also ask that the Court appoint Analytics Consulting LLC as the third-party Settlement Administrator. Analytics Consulting LLC has experience administering large and complex settlements and was jointly selected by the Parties. *See* Salas Decl. ¶ 25.

## V.   PLAINTIFFS' COUNSEL IS ENTITLED TO A REASONABLE FEE OF ONE THIRD OF THE TOTAL SETTLEMENT PAYMENT

The Settlement Agreement provides for attorneys' fees to be received as a percentage of the Gross Settlement Amount, *i.e.*, from the common fund established for all Plaintiffs. An award of attorney fees to a prevailing plaintiff under 29 U.S.C. § 216(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge. *Athan*, 523 F.Supp.3d at 970. "The very reason that the FLSA (and the civil-rights acts) mandate an award of reasonable fees to prevailing plaintiffs is that the monetary value of their claims is often too small to support the cost of litigating them." *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 617 (6th Cir. 2021).

District courts within the Sixth Circuit have the discretion to select one of two methods for calculating an award of attorneys' fees in a common fund case, using either a 'percentage of the fund' calculation or a lodestar multiplier. *Rawlings v.*

*Prudential–Bache Properties,* 9 F.3d 513, 516–17 (6th Cir. 1993). "In common fund cases, Sixth Circuit authority expresses no particular preference for application of either the lodestar method or the percentage of the fund method in determining awards of attorneys' fees; instead, it requires 'only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances.'" *Bessey v. Packerland Plainwell, Inc.*, No. 4:06-cv-95, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007) (quoting *Rawlings*). Courts in this Circuit have approved attorney's fees requests in the amount of one-third of the common-fund in other FLSA litigation. *Scobey*, 2021 WL 5040312, *5; *Skaggs v. Mobile Climate Control Corp.*, No. 21-CV-10250, 2021 WL 2434125, *1 (E.D. Mich. June 15, 2021); *Ware v. CKF Enterprises, Inc*., No. CV 5:19-183-DCR, 2020 WL 2441415, at *17 (E.D. Ky. May 12, 2020); *Daoust*, No. 17-cv-13879, 2019 WL 2866490, *5 (E.D. Mich. July 3, 2019); *Osman v. Grube, Inc.*, No. 16-CV-00802-JJH, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018) (citing cases).

In determining what constitutes a reasonable percentage of the fund, the Sixth Circuit directs district courts to evaluate six factors: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingency fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and

standing of counsel involved on both sides. *Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780 (6th Cir. 1996).

**A.    The Benefit Conferred to the Plaintiffs.**

The Settlement confers a significant benefit to each Plaintiff. The Gross Settlement Amount represents 100% of the overtime wages owed to all Settlement Class Members if they worked an additional 6 hours a week on top of the regular hours they were paid for working in each work week they worked for Defendant as a Plan Associate during the Class Period. *See* Salas Decl. ¶ 26. Even after the payment of Plaintiff's Counsel's attorneys' fees, litigation costs, service awards to the Named Plaintiffs, and the costs of settlement administration, the Settlement Class Members are receiving 60% of the estimated overtime wages owed if they worked an additional 6 hours in each week they worked during the Class Period. *Id.* The largest settlement payment is estimated to be more than $7,200, with the average settlement payment being approximately $2,795. *Id.* This is an excellent result given that Defendant denies that Plan Associates were unlawfully denied overtime wages and vigorously disputes that Plan Associates regularly worked over 40 hours a week.

This is an extraordinary result by any measure. *See Rotuna v. W. Customer Mgmt. Grp., LLC*, 09-CV-1608, 2010 WL 2490989, *8 (N.D. Ohio June 15, 2010) (awarding one-third of common fund as fee in wage case and describing recovery of 75% to 25% of claimed wages as "exceptional."); *Dillworth v. Case Farms*

*Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at \*8 (N.D. Ohio Mar. 8, 2010) (awarding one-third of common fund as fee in wage case and describing recovery of one-third of claimed wages as "exceptional."). Further, the terms of the Settlement Agreement provide each Eligible Settlement Class Member with the flexibility to decide whether to accept or reject their award.

**B.     The Value of Plaintiffs' Counsel's Services on an Hourly Basis**

Plaintiffs' Counsel has expended substantial time and expense investigating these claims, analyzing and reviewing thousands of lines of electronic payroll data. The Court is not required to conduct a lodestar cross-check of the percentage of the fund fee award. *Barnes v. Winking Lizard, Inc.*, No. 18-CV-952, 2019 WL 1614822, at \*6 (N.D. Ohio Mar. 26, 2019). Nevertheless, if the Court did employ a lodestar cross check, Plaintiffs' Counsel's lodestar for attorneys' fees in this mater, for the work they performed from June 2021 through the date of this filing, exceeds $108,000. *See* Salas Decl. ¶ 27. This does not account for the work Werman Salas will perform in the future to fulfill their obligations under the Settlement. *Id.* This results in a multiplier of 1.25, which is well within the acceptable range of multipliers. *See Feiertag v. DPP Holdings, LLC,* 2016 WL 4721208, at \*7 (S.D. Ohio Sept. 9, 2016) (finding award of common fund attorneys' fees in amounts two to three times greater than the lodestar have been reasonable); *Castillo v. Morales, Inc.*, No. 12-CV-650, 2015 WL 13021899, at \*7 (S.D. Ohio Dec. 22, 2015) (approving

2.5 multiplier); *Swigart v. Fifth Third Bank*, No. 11-CV-88, 2014 WL 3447947, at *5-6 (S.D. Ohio July 11, 2014) (approving 2.57 multiplier that was one-third of fund).

Moreover, "where 'class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower' because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Sewell v. Bovis Land Lease, Inc.*, No. 09-CV-6548, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) (quoting *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010)). Here, Plaintiffs' counsel will be required to expend additional time and effort even after finalization of the Settlement Agreement.

In light of the risk of continuing to litigate Plaintiffs' claims, as well as the excellent monetary benefit to all Plaintiffs, this factor weighs in favor of granting Plaintiffs' counsel request for one-third of the common fund as attorneys' fees. *Rotuna*, 2010 WL 2490989, at *8; *Dillworth*, 2010 WL 776933, at *8.

**C.   Plaintiffs' Counsel Executed Contingency Fee Arrangements, and Bore the Risk That They Would Receive No Recovery if Unsuccessful**

This factor favors approval because Plaintiffs' Counsel took this case on a pure contingency fee basis, creating a real risk of nonpayment. *See* Salas Decl. ¶ 28.

19

Plaintiffs' Counsel's fee agreements with the Named Plaintiffs entitle Plaintiffs' Counsel to one-third of any recovery.  Plaintiffs' Counsel took the risk that they would obtain no recovery at all, or that the one-third recovery received would be less than their lodestar and were prepared to make this investment despite the practical uncertainty of a successful outcome. *See, e.g., Scobey*, 2021 WL 5040312, at *5 (awarding attorneys' fees equal to one-third of the settlement amount in light of the attorney's performance and the public interest in incentivizing attorneys to take on alleged wage violation cases); *Doe 1-2 v. Déjà vu Services, Inc.*, 16-CV-10877, 2017 WL 2629101, at *11 (E.D. Mich. June 19, 2017) (". . . Plaintiffs' counsel operated on a contingency fee basis, which often justifies an increase in the award of attorney's fees." (internal citations omitted)); *Dillworth,* 2010 WL 776933, *8 (the contingent nature of the fee agreement militates in favor of awarding one-third.).

### D.    Public Policy Supports the Award

"The FLSA is a remedial statute, the purpose of which is served by adequately compensating attorneys who protect wage and hour rights." *McMahon v. Olivier Cheng Catering and Events*, No. 08-CV-8713, 2010 WL 2399328, *7 (S.D.N.Y. Mar. 3, 2010). Indeed, the purpose of fee awards in wage and hour cases is to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Id.* Indeed, "society has a stake in rewarding the efforts of the attorneys who bring wage

and hour cases, as these are frequently complex matters." *Gentrup v. Renovo Services, LLC*, No. 07-CV-430, 2011 WL 2532922, at *4 (S.D. Ohio June 24, 2011). Thus, public policy favors a common fund attorneys' fee award.

### E.     Complexity of the Litigation

As mentioned *supra*, employment cases, especially employment class action cases, are highly complex. *See Coliseum Bar & Grill*, 2020 WL 7346693, at *1. Moreover, if the litigation continued, the Parties faced lengthy, complex discovery, including discovery and depositions of numerous opt-in plaintiffs and management level employees employed by Defendant. This action's motion practice would likewise be highly complex, involving at a minimum initial certification motion, likely decertification motion, summary judgment motions, and pretrial motions practice. The Parties would also face battles related to damage analysis and Defendant's willfulness and good faith (or lack thereof). Accordingly, this factor favors Plaintiffs' Counsel's requested fee award.

### F.     The Professional Skill and Standing of Counsel

The skill and standing of counsel are substantial. Werman Salas P.C. has extensive experience representing workers in wage and hour class actions and an excellent reputation among the employment law bar. *Osman v. Grube, Inc.,* No. 16 Civ. 00802, 2018 WL 2095172, at *4 (N.D. Ohio May 4, 2018) (Werman Salas are "recognized lawyers in wage and hour litigation and have an excellent national

reputation in representing [] employees in this type of case . . . Courts recognize [Werman Salas] as leaders in advocating the rights of such workers throughout the United States."); *Mouloki v. Epee,* No. 14 Civ. 5532, 2017 WL 2791215, at *3 n.4 (N.D. Ill. June 27, 2017) (Werman Salas are "highly respected and experienced attorneys . . . in wage and hour cases."); *Sanchez v. Roka Akor Chicago LLC,* No. 14 Civ. 4645, 2017 WL 1425837, at *5-7 (N.D. Ill. Apr. 20, 2017) (Werman Salas are "national leaders in advocating the rights of working people in wage and hour litigation."). *See* Salas Decl. ¶¶ 3-5 and Firm Resume attached thereto.

## VI.   PLAINTIFFS' LITIGATION COSTS

The Settlement Agreement provides that Plaintiffs may apply to the Court for payment of litigation expenses up to $7,500.  Plaintiffs' Counsel seek reimbursement of $5,735.49, which is the amount of litigation expenses Plaintiffs' Counsel has incurred in this matter through filing this action and in mediation fees. *See* Salas Decl. ¶ 29. Plaintiffs' Counsel's request of that amount from the Gross Settlement Amount as payment of costs and expenses is appropriate, as these costs and expenses were necessarily incurred in order to litigate and settle this case. *Id.*

## VII.   NAMED PLAINTIFFS ARE ENTITLED TO A SERVICE AWARD

Plaintiffs seek Service Awards for Named Plaintiffs Heather Lawrence, Kathy Campau and Laura Pettis-Clark. These service payments are being sought in recognition of efforts to pursue the claims raised in this Action on behalf of all

Plaintiffs, including providing factual information and otherwise assisting Plaintiffs'
Counsel with the prosecution of the Action. *See* Salas Decl. ¶¶ 23-24. In light of
their substantial efforts resulting in the Settlement on behalf of the Plaintiffs, the
proposed Service Awards of $4,000.00 each are well deserved.

Incentive awards are fairly common in class action litigation. *See Griffin v.
Flagstar Bancorp. Inc.*, No. 10 Civ. 10610, 2013 WL 6511860, at *9 (E.D. Mich.
Dec. 12, 2013) (approving incentive awards and stating "[s]uch awards have been
approved by the Sixth Circuit"); *Liberte Capital Group v. Capwill*, No. 99-CV-
818, 2007 WL 2492461, at *1–2 (N.D. Ohio Aug. 29, 2007). The named plaintiff is
an "essential ingredient" in the class action process, and incentive awards are
appropriate where necessary to induce participation in suits. *Great Neck Cap.
Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400,
412 (E.D. Wis. 2002); *see also In re Dunn & Bradstreet Credit Services Customer
Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990) ("Numerous courts have not hesitated
to grant incentive awards to representative plaintiffs who have been able to effect
substantial relief for classes they represent.").

As described *supra*, the Participating Settlement Class Members will benefit
substantially from the settlement. *Ware*, 2020 WL 2441415, at *17 (benefit to the
class is a factor to be considered in determining whether to award an incentive
award). This collective class recovery is because of the work of the Named Plaintiffs,

who devoted significant time to assisting Plaintiffs' Counsel. They participated in lengthy initial interviews while Plaintiffs' Counsel were developing their theory of the case, provided insight in the construction of damage calculation models, attended a day-long mediation, reviewed the proposed settlement terms, and continually made themselves available for contact by Plaintiffs' Counsel. *See* Salas Decl. ¶ 23.

The Named Plaintiffs have also staked their reputation and future work prospects at risk, further militating in favor of an incentive award. *See Ware*, 2020 WL 2441415 at *17. Incentive awards are particularly appropriate in employment litigation, where the plaintiffs are former or current employees of the defendant, and accordingly risk adverse action by the employer, co-workers, or future employers as a result of their willingness to vindicate the FLSA rights. *See Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007). Here, these individuals undertook substantial direct and indirect risk. They agreed to bring their action in their own names, and agreed that they would, if necessary, take depositions, answer discovery, and testify at trial. They assumed the risk that if the lawsuit would fail, they would be liable for defendant's costs.

Lastly, the incentive award here is equal to or less than other service awards approved in this Circuit. *See, e.g., Lasalle Town Houses Cooperative Association v. City of Detroit,* No. 4:12-cv-13747, 2016 WL 1223354, at * 8 (E.D. Mich. March 29, 2016) (approving service awards of $6,000 each to five Named Plaintiffs) (Drain,

J.); *Pieber,* 2022 WL 687248, at *3 (approving service award of $6,000 for Named Plaintiff in wage and hour misclassification settlement with total settlement amount of $200,000); *O'Bryant*, 2020 WL 7634780, at *16 (awarding $10,000.00 service award in light of plaintiffs' contributions to the action)*; Paxton v. Bluegreen Vacations Unlimited*, No. 16-CV-523, 2019 WL 2067224, at *3 (E.D. Tenn. May 9, 2019) (approving service awards of $5,000 each); *Osman*, 2018 WL 2095172, at *2 (approving a $7,500.00 service award for named Plaintiff who "provided the factual basis for the lawsuit," provided a declaration, and attended the settlement conference); *Kritzer v. Safelite Solutions, LLC*, No. 10-CV-0729, 2012 WL 1945144, at *15  (S.D. Ohio May 30, 2012) (awarding $15,000 in service awards to the named plaintiffs in FLSA settlement); *see also Newberg on Class Actions* § 11:38 (citing empirical study from 2006 that found average award per class representative to be $16,000.00).

## VIII.  <u>CONCLUSION</u>

The Settlement Agreement is a fair and reasonable settlement of a bona fide dispute between the Parties. Thus, the Court should approve the Parties' Joint Stipulation of Settlement.

Dated:       November 18, 2022                              Respectfully submitted,
                                                                        */s/ Maureen A. Salas*
                                                                        Maureen A. Salas (IL Bar #6289000)
                                                                        **Werman Salas P.C.**
                                                                        T: (312) 419-1008; E: msalas@flsalaw.com
                                                                        77 W. Washington St., Ste 1402, Chicago, IL 60602